The opinion of the Court was delivered by
Johnston, J.
The plaintiff, Carmichael, placed a raft of timber in the custody of one Huggins, whom he hired to float it down the Pee Dee to Georgetown, and deliver it to Mr. Shackleford, his factor, for sale, and bring back the factor’s receipt. Huggins started, in company with his brother, with the raft; but deviated from his route, carried it to Bull creek, and sold it as his own, to Buck, the defendant, and failed to pay over the proceeds to his employer. Carmichael pursued his property, and finding it in Buck’s possession, demanded it of him; and being refused, brought this action.
He has proved his property; has established the want of authority in Huggins to sell it; has shown the conversion of it by the defendant, to his own use; and demands a legal remedy for the wrong done him.
To this the defendant replies that he bought it of Huggins, who had the custody, and who represented it to belong to him; and that he paid him for it in ignorance of the plaintiff’s right.
*459 The jury has rendered a verdict for defendant; and this is an appeal of the plaintiff for a new trial.
Now, I think no man is to be deprived of his property simply because a third party has imposed it upon a purchaser as his own, when it was not; unless the real owner has, in some reasonable degree, contributed to the imposition. The purchaser, claiming to hold it against the owner must, on general principles, have got his title, or he has got nothing: and that title could pass only by the owner’s personal transfer, or by the transfer of his agent, authorized to 'make it, either by express authority, or by authority which the law, on sound principles of policy, will imply.
It is vain for the purchaser to rely merely on his own ignorance or innocence. Every one feels for a man who has been deceived. But the being deceived is not enough to entitle him to another man’s property. Should a thief, for example, have stolen goods, and sold them; though he has deceived the purchaser, this constitutes no just reason for relieving the latter at the expense of the party robbed.' Unless he has, to some reasonable extent, made himself privy to the injury of the vendee, is he not entitled to equal protection on the score of innocence, and to additional protection as the real owner of the property ?
' It is familiar law, that where one buys, as Buck did in this case from Huggins, from one who claims to be the owner; his interest must be presumed to depend on the title, and warranty of his vendor; and if that title is null, his resort should be to him for redress.
This is the fundamental principle in such cases. But, though no agency was disclosed to him, or even suspected by him, yet if he discovers and can show, that thé person from whom he bought, was, in fact, the agent of another, the law so far indulges him as to allow him to resort to that other, according to the degree of his privity to the transaction, and of the authority he may have imparted to his vendor. If in this *460 way he can derive a general authority from the owner to the vendor, or a particular authority, sufficient to warrant the sale by him, as a,gent of the owner, he has made out a good case against the owner, both as to title, and as to any other remedy which the case may in law require.
• And he may go still further. If he show that the owner held out the vendor as real owner, when he was not; or committed to him a general authority, of a public eommercial character, such as that of a factor, which in se implies agency, and'whose function is essentially only to buy and sell, while by secret or private instructions, he affected to'limit'him in the exercise of it; in either case, the-owner’s right of reclamation will be destroyed. - He is bound by the sale! Or if he stands by and permits one in possession of his property to represent and sell it as his owd, without contradiction, he is 'equally bound by his fraud, as if he had made the transfer himself.1 ...
'- These principles are clear ; but it is equally clear that if the owner has imparted no general authority, nor any special authority justifying a sale of his property, and has not countenanced the sale, nor- by his conduct misled the purchaser; he is not bound, and he is entitled to have his property back.
Dependence is placed, in this case, on certain facts supposed to have been established by the jury, to turn aside the general’ principles. ■■
It is the province- of a jury'to ‘draw inferences--frem. the-evidence in a case before them. - But their inferences should be reasonably warranted by the evidence. It would be a mere sporting with justice to uphold-:a verdict resting in caprice; or a verdict founded entirely on-trifling'or imrna-' terial facts. Where there is-.in a case’ a well balanced conflict. of evidence, and the jury allows one scale to go down under the influence of trivial circumstances, their finding should not’be'disturbed; since even trifles may cause 'a-preponder-' anee ;’-but where the verdict affects injuriously general and- *461 salutary principles of law, and of reason, and is made without .evidence, or. on a clearly mistaken view of the evidence, it should he set aside. .
In this case, it is attempted to uphold the-verdict, by evidence that the plaintiff may have contributed to the deception of the defendant, in. two particulars.
. 1. That he placed the raft in the hands of two white-men, and thus, enabled them to hold themselves out as owners of the property.' . , •
, 2. That a custom is shown to exist, that purchases are made from raftsmen, declaring themselves.'to. be owners; and the plaintiff’s placing the raft in-this case in.Huggins’ custody,, enabled him to impose it on Buck as his own.' •
In the evidence there is no proof,.whatever that .Carmichael did.more than place his timber .• in. the.-hands.of a bailee for a limited and, special purpose : a case- of special agency. . If, from the mere fact of placing property'in'the hands of. a .bailee, whose proper "function: is, to carry and not, to sell, without more, a jury is at liberty to infer a power to go beyond the special authority, and-, infer a general power to sell; it is palpable that the rights of property may as well be given up,,and the distinction between general and special -agencies, abrogated. The law is not so. The jury must have some act, some declaration, some conduct, on the part of the owner, fitted to 'deceive an innocent public. If the mere custody of property is such evidence of ownership as to mislead, then what can a bailor do? Must he lose his property unless he go along, and make continual proclamation of his .rights, or of the limited contract he has made ? There is no other solution o.f the difficulty, it seems to me, but to declare that where one for a special purpose, commits his property to a limited agent, in the. usual way of doing such things, he is not to be accused of holding out the agent as more than he is, or giving him the indicia of ownership.
“ When,” says Story,(a) “ the agency, is not held out by *462 the principal by any acts, or declarations, or implications, to be general, in regard to the particular act or business, it must, from necessity, be construed according to its real nature and extent; and the other party must act at his own peril, and is bound to inquire into the nature and extent of the authority conferred. In such a case there is no ground to contend that the principal ought to be bound by the acts of the agent, beyond what he has apparently authorized; because he has not misled the confidence of the other party, who has dealt with the agent. Each party is equally innocent; and in a just sense, it cannot be said that the principal has enabled the agent to practice any deception upon the other party. The duty of inquiring, then, is incumbent on such party ; since the principal has never held the agent out, as having any general authority whatsoever, in the premises, and if he trusts, without inquiry, he trusts to the good faith of the agent, and not to that of the principal.”
Now, what indicia of ownership did Carmichael impart to Huggins? None, whatever, according to the proof, except giving him possession: and if the possession of a bailee of this description is sufficient index of ownership to be construed into a misleading of the public, it will no longer be safe for a planter to send his cotton to market by a wagon or a boat.
And as to the custom relied on, it is pernicious, unreasonable, and not to be allowed that the mere pretension to ownership by the custodian of property, is sufficient to oust the owner. Observe in this pretended custom, not shown to be universal, but the contrary, there is no allusion whatever to agency, or to the degree of agency involved. The evidence is simply that it was considered safe to buy from raftsmen claiming to be owners. This, as a legal opinion, and it is nothing more, is incorrect.
The doctrines contended for are more assimilated to equity than to law. Eew things are more dangerous in a law Court, *463 tban attempts to administer the principles of a j urisdiction so foreign to its own. That it is competent, and even commendable for law forums to amplify the remedies within their jurisdiction by enlarging the scope of their administrative functions in matters of practice, is cheerfully admitted. But the doctrines and principles administered should be law and not equity doctrines. Any thing else tends to confusion and conflict. But even .in Equity Courts, the 4egal title must be acquired, or the purchaser gets nothing; and it is only when to the legal title, he adds freedom from all notice of trusts attaching to the property, that he entitles himself to hold it against the former owner.
It is the opinion of this Court, that a new trial should be granted, and it is ordered accordingly.
Motion for new trial granted.
O’Neall, O. J., and Wardlaw, J., concurred.

Motion granted.

 Story on Agency, sec. 133.